Margaret M. SMITH, individually and as the Administratrix of the Estate of Wesley Smith, also known as Calvin Wesley Smith, deceased, Plaintiff and Appellant,

v.

Jennie ANDERSON, the City of Williston, North Dakota, a municipal corporation, and all other persons unknown claiming any estate in, or lien or encumbrance upon the real property described in the complaint, Defendants and Respondents.

No. 8317.

Supreme Court of North Dakota.

Aug. 5, 1966.

Michael R. McIntee, Williston, for appellant.

Davidson & Whisenand, Williston, for respondent Jennie Anderson.

ERICKSTAD, Judge.

This is an appeal by the plaintiff, Margaret M. Smith, from a judgment entered on the order of the District Court of Williams County quieting title in the defendant Jennie Anderson to the north 10 feet of the west 46⅔ feet of Lot Eighteen of Block Three of the Original Townsite of Williston. Trial de novo is demanded.

By quitclaim deed filed April 13, 1907, the City of Williston acquired title to the north 10 feet of Lot Eighteen of Block Three of the Original Townsite of Williston. According to the abstract of title the property was "dedicated and sold said City of Williston for use as a public alleyway."

The facts are in dispute, but we believe that it may be reasonably concluded that the said strip of land was used as a public alleyway for some time thereafter, the exact number of years being unknown.

On April 23, 1946, the plaintiff and her husband Wesley Smith, together with Jennie Anderson, Carl T. Anderson, and Phyllis S. Polk, executed an instrument entitled "Petition to Vacate Part of a Certain Public Alley." The pertinent part of the petition reads as follows:

> The petitioners, being the owner [sic] of all the property on the line of and the owners of all of the property adjoining that certain public alley hereinafter described, hereby petitions [sic] the said Board of Commissioners of the City of Williston, North Dakota, that the certain alley Ten (10) feet in width and one hundred fifty (150) feet in length running east and west between Lots Seventeen and Eighteen of Block Three of the Original Townsite of the City of Williston, North Dakota, or more specifically described as the north ten feet of Lot Seventeen of Block Three of the Original Townsite of the City of Williston, North Dakota, be vacated.

It is important to note at this point that the petition described the property to be vacated as the north ten feet of Lot Seventeen, whereas to cover the property which is the subject of this action, it should have described it as the north ten feet of Lot Eighteen.

Mrs. Smith contends that the petition was defective because it was not verified as required by § 40–3905 of the North Dakota Revised Code of 1943, then in effect, which read as follows:

> Petition for Vacation of Streets, Alleys, or Public Grounds; Contents; Verification. No public grounds, streets, alleys, or parts thereof within a municipality shall be vacated or discontinued by the governing body except on a petition signed by all of the owners of the property adjoining the plat to be vacated. Such petition shall set forth the facts and reasons for such vacation, shall be accompanied by a plat of such public grounds, streets, or alleys proposed to be

vacated, and shall be verified by the oath of at least one petitioner.

She also alleges that she did not realize that she was signing a petition for the vacation of any property, and that had she known that this was the effect of the petition she would not have signed it.

A copy of the plat attached to the petition describing the property to be vacated follows:

Block 3 Original Townsite

The notice of the filing of the petition executed by the city auditor did not describe the lot through which the alley extended. It merely described the area to be vacated as follows:

The alley extending east and west from First Avenue West to the alley running North and South through Block 3 of the Original Townsite to Williston, North Dakota.

The affidavit of publication of the resolution adopted by the City of Williston vacating the alley disclosed that the published resolution contained the following language:

BE IT RESOLVED, By the Board of Commissioners of the City of Williston, North Dakota, that said Board deems it expedient, and for the best interests of the public and for the best interests of said City of Williston, that said petition be and the same hereby is granted; and that all that part of the public alley extending East and West from First Avenue West to the alley running North and South,

through Block 3 of the Original Townsite to Williston, North Dakota, be and the same hereby is forever vacated; *and all the lands embraced within the said alley so vacated shall revert to the owners and become a part of the respective tracts of land of Lot 17 of Block 3 of the Original Townsite to Williston, North Dakota.* [Emphasis added.]

Thus the affidavit of publication of the resolution indicates that the City vacated a part of Lot Seventeen, and it was not until after the document was indexed in the office of the register of deeds of Williams County that the part of the resolution which referred to the reversion of the vacated land was changed from Lot Seventeen to Lot Eighteen.

It is clear, therefore, that the entire proceedings related to and drew the attention of the public to a part of Lot Seventeen rather than to a part of Lot Eighteen.

Section 40–3907 of the North Dakota Revised Code of 1943, then in effect, provided for a hearing on a petition to vacate. It read as follows:

Hearing on Petition; Passage of Resolution Declaring Vacation by Governing Body. The governing body, or such committee as may be appointed by it, shall investigate and consider the matter set forth in the petition specified in section 40–3905 and, at the time and place specified in the notice, shall hear the testimony and evidence of persons interested. After hearing the testimony and evidence or upon the report of the committee favoring the granting of the petition, the governing body, by a resolution passed by a two-thirds vote of all its members, may declare the public grounds, streets, alleys, or highways described in the petition vacated upon such terms and conditions as it shall deem just and reasonable.

Section 40–3908 of the North Dakota Revised Code of 1943 required that the resolu-

tion be published as in the case of ordinances. That section read as follows:

Resolution To Be Published, Filed, and Recorded; Effect. Before the resolution declaring the vacation of a public ground, street, or alley shall go into effect, it shall be published as in the case of ordinances. A transcript of the resolution, duly certified by the city auditor or village clerk, as the case may be, shall be filed for record and duly recorded in the office of the register of deeds of the county in which the municipality is situated, and such resolution thereafter shall have the effect of conveying to the abutting property owners all of the right, title, and interest of the municipality to the property vacated.

Section 40–3910 of said code granted aggrieved persons the right of appeal within twenty days after the publication of the resolution. It read as follows:

Aggrieved Person May Appeal to District Court. Any person aggrieved by the decision of the governing body granting the vacation of any public grounds, street, or alley, within twenty days after the publication of the resolution, may appeal to the district court of the county, and the judgment of the court therein shall be final.

These sections of the Code were designed to protect the public. The petition and its attached plat referring to Lot Seventeen, the vague reference to an alley extending east and west from First Avenue West to the alley running north and south through Block Three contained in the notice of the filing of petition as it was published, and the reference in the affidavit of publication of the resolution to the fact that the vacated land reverted to the owners of Lot Seventeen did not properly alert the public to the fact that a part of Lot Eighteen was affected.

The proceedings, therefore, cannot be said to have legally affected the rights of the public in the north 10 feet of Lot Eighteen.

It is contended by Mrs. Anderson that, although the proceedings to vacate the alley were defective, they, with the recording of the altered transcript of the resolution, were sufficient to constitute color of title, and that therefore she is entitled to the property, having adversely possessed it under color of title and paid the taxes on it for ten years.

The trial court, in quieting the title to the property in Mrs. Anderson, was apparently in accord with this view.

■ The question that comes to mind at the outset is whether a municipality can be divested of title to its public streets and alleys by adverse possession. Our view is that it cannot. See City of Jamestown v. Miemietz, 95 N.W.2d 897 (N.D.1959); and Dacotah Hotel Company v. City of Grand Forks, 111 N.W.2d 513 (N.D.1961).

■ It has been said that the weight of authority supports the conclusion that title to public streets and alleys cannot be acquired by prescription.

* * * By the great weight of authority it is held that the rights of the public in a street or alley cannot be divested by adverse possession of another for the statutory period, unless the public use has been abandoned by competent authority and the land is held as proprietary property. Thus, no title can arise out of long-continued encroachment or obstruction of a public street or alley. Nor is it material that the adverse possession is of all of the street in question, instead of merely a part thereof.

Accordingly, by the weight of authority, title to public streets and alleys cannot be acquired by prescription. In many of the states in which the opposite rule formerly prevailed, statutes have been enacted changing the law to conform to the majority view * * *.

11 McQuillin, Municipal Corporations § 30.179, at 88–92 (3d ed. rev. 1964).

The writers of American Jurisprudence call this view a widely accepted general rule:

Before it becomes material whether possession of a street, highway, park, square, or the like is adverse, the particular governmental body against whom the right is asserted must be subject to the running of the statute of limitations; the federal and state governments are not generally subject to the statute, and the tendency is to regard other governmental subdivisions in the same light, at least in regard to property held for public use. It is therefore a widely accepted general rule that the statute of limitations does not run in favor of those who occupy property of this character, and that no title can be acquired thereto by such occupancy, no matter how long it has been continued and whatever may have been its character. * * *

3 Am.Jur.2d Adverse Possession § 207, at 300 (1962).

Although it is acknowledged by both texts referred to that there is authority to the contrary, we are convinced that the rule stated by the weight of authority is the correct one.

We find no merit in Mrs. Anderson's contention that this case should be distinguished from City of Jamestown v. Miemietz and Dacotah Hotel Company v. City of Grand Forks, supra, because the instant case concerns interpretation of § 47–0603, N.D.R.C. of 1943, which provides for the acquisition of title through adverse possession under color of title and payment of taxes for ten years, whereas the other cases concerned interpretation of § 28–0104, N.D. R.C. of 1943, providing for acquisition of title merely through twenty years of adverse possession.

These statutes read as follows:

47–0603. Title to Real Property; Adverse Possession. A title to real property, vested in any person who shall have been in the actual open adverse and un-

disputed possession of the land under such title for a period of ten years and who shall have paid all taxes and assessments legally levied thereon, shall be valid in law.

28–0104. Actions for Recovery or Possession of Real Property; Limitation. No actions for the recovery of real property or for the possession thereof shall be maintained, unless the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the premises in question within twenty years before the commencement of such action.

We do not believe that the difference in the language of the two statutes is sufficient, if we are to be consistent, to permit us to hold that under the first statute a municipality can be divested of title to its public streets and alleys by adverse possession, while under the latter statute it may not.

■ As the Supreme Court of the United States said in United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884, statutes which in general terms divest pre-existing rights or privileges will not be applied to the sovereign without express words to that effect. This rule we very recently quoted with approval in City of Minot v. General Drivers & Helpers U. No. 74, 142 N.W.2d 612 (N.D.1966).

It is contended by Mrs. Anderson that should it be determined that she has not acquired title through adverse possession, nevertheless the plaintiff is estopped from denying the validity of the vacation proceedings, having participated in them and having accepted the benefits of them. In this connection it should be noted that the north ten feet of the middle 46⅔ feet of Lot Eighteen of Block Three is presently occupied by the plaintiff's building.

It is argued that a person who, with knowledge of the facts assents to judicial proceedings without objection, is generally bound by such proceedings as against one who has been misled to his injury by such conduct, especially when the party against

whom estoppel is claimed has accepted the benefits or enjoyed rights under the proceedings. In support thereof Mrs. Anderson refers us to 31 C.J.S. Estoppel § 115 (1964), a part of which reads as follows:

* * * [W]here a party with knowledge of the facts assents to, or participates in, judicial proceedings without objection, he is generally bound by such proceedings as against one who has been misled to his injury by such conduct, especially where the party against whom the estoppel is claimed has accepted benefits or enjoyed rights under the judgment, decree, or order rendered therein. 31 C.J.S., supra, at 602–604.

She asserts that the holding of this court in First State Bank of Strasburg v. Schmaltz, 61 N.D. 150, 237 N.W. 644, is applicable in this case.

The pertinent part of that decision reads as follows:

* * * In short, what the appellant seeks to do here is to retain whatever advantage may have resulted to her as a result of the judgment and the proceedings had thereunder, and to repudiate the judgment in so far as it now operates to her disadvantage. This she may not do. It is well settled that a party who receives and retains benefits arising out [of] or accruing under a judgment may not be heard to say that it is invalid. [Citations omitted.] First State Bank of Strasburg v. Schmaltz, supra, at 647.

■ As applicable as this rule might be to the assertion of the plaintiff's individual rights if all elements of estoppel were proved, we question that it could apply to defeat the rights of the public for whom she also brings the action. It should be noted that her amended complaint asserts that she is a resident, elector, and taxpayer of the City of Williston and that she brings the action for herself and for all others similarly situated.

■ It is no defense that the City in its answer claimed no estate, title, or interest in the contested premises. See Le Pire v. Workmen's Compensation Bureau, 111 N.W.2d 355 (N.D.1961), in which we said:

If counsel for the State fails to protect the State's interests in any litigation and this failure becomes apparent to the court, the court should see that the public interests are protected.

Le Pire v. Workmen's Compensation Bureau, supra, Syllabus 2.

Mrs. Anderson further argues that an action to quiet title may not be defeated by showing that the claimant's interest, otherwise sufficient to support the action, is subject to possible superior rights in third persons who are not parties to the suit, but it is enough if the interest asserted by the claimant in possession of the land is superior to that of those who are defending against his claim. In support thereof she refers the court to 44 Am.Jur. Quieting Title § 50, at 39 (1942). The footnote to that section cites United States v. State of Oregon, 295 U.S. 1, 55 S.Ct. 610, 79 L.Ed. 1267. Our court, in a quiet title action, in citing the said Supreme Court decision, said:

In order to prevent the plaintiff from recovering judgment the respondent would invoke the rule that in an action to quiet title to real estate the plaintiff must rely upon the strength of his own title and not upon the weakness of that of his adversary. See Nord v. Nord, 68 N.D. 560, 282 N.W. 507, and cases cited. In this case the plaintiff has a title that is superior to any rights claimed by the respondent. His argument is best answered in the words of the United States Supreme Court in United States v. State of Oregon, 295 U.S. 1, 55 S.Ct. 610, 619, 79 L.Ed. 1267:

"A bill to quiet title may not be defeated by showing that the plaintiff's interest, otherwise sufficient to support the bill, is subject to possibly superior rights in third persons not parties to the suit."

Pierce Tp. of Barnes County v. Ernie, 74 N.D. 16, 19 N.W.2d 755, at 760.

■ We believe that it is very important to note that the possibly superior rights in third parties which the United States Supreme Court said could not be raised as a defense were rights of persons not parties to the suit. In the instant case the City of Williston is a party to the suit, although it denied any interest in the premises, and the plaintiff brought the action not only for herself but for all others similarly situated, she having described herself in the complaint as an elector and taxpayer of the City of Williston. Under these circumstances we believe that the rights of the public are in issue, and, thus, that title to the north 10 feet of the west 46⅔ feet of Lot Eighteen in Block Three can be quieted in no one other than the City of Williston for use as described in the deed whereby the City acquired its interest therein.

The judgment of the trial court is therefore reversed and the case is remanded with instructions to the trial court to order judgment in conformity with this opinion.

TEIGEN, C. J., and STRUTZ, KNUDSON and MURRAY, JJ., concur.